## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

TRACI L. BROWN,
    Plaintiff,

  vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-851

Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's applications for disability insurance benefits (DIB) and supplemental security income

(SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 6), the

Commissioner's response in opposition (Doc. 14), and plaintiff's reply memorandum (Doc. 16),

and on plaintiff's motion to remand (Doc. 7) and the Commissioner's memorandum in

opposition (Doc. 15).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in July 2010, alleging disability since March

12, 2009, as a result of heart disease and congestive heart failure. (Tr. 255). Plaintiff's

applications were denied initially and upon reconsideration. Plaintiff, through counsel,

requested and was granted a *de novo* hearing before administrative law judge (ALJ) Peter J.

Boylan. Plaintiff, a medical expert (ME), and a vocational expert (VE) appeared and testified at

the ALJ hearing. On April 25, 2012, the ALJ issued a decision denying plaintiff's DIB and SSI

applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).   The claimant has the burden of proof at the first four

steps of the sequential evaluation process.   *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541,

548 (6th Cir. 2004).   Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy.   *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

### B.   The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since March 12, 2009, the alleged onset date (Exhibit 12D) (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: obesity, congestive heart failure (CHF), status post myocardial infarction (MI), status post coronary artery bypass graft (CABG), and chronic ischemic cardiomyopathy (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).   With normal breaks, the [plaintiff] can stand/and or walk a total of 2 hours in an 8-hour workday, and sit for a total of 8 hours in an 8-hour workday.   She can occasionally lift 15 pounds and occasionally carry 10 pounds.   The [plaintiff's]

pushing and pulling limitations are the same as the limits for lifting and carrying. The [plaintiff] can occasionally crawl, crouch, kneel, stoop, bend, or balance. She can never climb ladders, ropes, or scaffolds, and she is limited to climbing two flights of stairs and then would need a break for 10 to 15 minutes.  She can have exposure to fumes, odors, dusts, gases or poor ventilation for one hour at a time and then would need to have a 15 minutes rest.  The [plaintiff] must avoid all workplace exposure to hazards such as hazardous machinery and unprotected heights.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

7. The [plaintiff] was born [in] . . . 1979 and was 29 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from March 12, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 19-26).

---

[1]Plaintiff has past relevant work as an airport utility worker/gate agent/data entry individual.  (Tr. 25, 87, 322).

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform unskilled sedentary jobs such as charge account clerk, information clerk and address clerk, with 1,200 jobs in the regional economy and 143,000 jobs in the national economy.  (Tr. 26).

4

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

5

### D.  Specific Errors

On appeal, plaintiff argues that: (1) the ALJ erred in assessing the weight given to the medical source opinions; (2) the ALJ erred by failing to evaluate plaintiff's ability to sustain work for 40 hours each week pursuant to Social Security Ruling 96-8p; (3) the ALJ failed to consider whether plaintiff was entitled to a closed period of disability; and (4) the ALJ erred in assessing plaintiff's credibility.  (Docs. 6 and 16).  Because plaintiff's first and third assignments of error are closely interrelated, the Court will combine them and consider them together.

Plaintiff brings a fifth assignment of error alleging that the Appeals Council erred by declining to consider new and material evidence submitted after the ALJ's decision.  (Doc. 6). Whether the Appeals Council erred in plaintiff's case is not an issue that is properly before the Court.  When the Appeals Council has declined review as it did in this case, it is the decision of the ALJ and therefore the facts before the ALJ that are subject to appellate review, not the subsequent decision of the Appeals Council.  *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993).  The Court will therefore consider plaintiff's arguments related to the consideration of newly-submitted evidence only in connection with her request for a remand pursuant to Sentence Six of 42 U.S.C. § 405(g).  (*See* Doc. 7).

### 1. First and third assignments of error

Plaintiff alleges that the ALJ erred by crediting the opinion of the ME, Dr. Alan Kravitz, M.D., over the opinions of her treating physicians, Drs. Kevin J. Miller, M.D., and William T. Abraham, M.D., in rendering a finding of non-disability.  Plaintiff specifically alleges that the ALJ erred by relying on Dr. Kravitz's testimony because: (1) Dr. Kravitz erroneously classified

plaintiff's heart impairment as New York Heart Association (NYHA) Class II based on 2012 medical data and ignored earlier ratings of Class II-III and Class III[3]; (2) Dr. Kravitz erroneously relied on plaintiff's ability to climb two flights of stairs when assessing her limitations, even though plaintiff clarified that she can only do this on "most days" (Tr. 794) and she reported in September 2009 that she was short of breath on climbing only one flight of stairs (Tr. 340); (3) Dr. Kravitz failed to consider plaintiff's obesity, which she alleges would further reduce her ability to sustain work for 40 hours each week; and (4) the ALJ failed to resolve "inconsistencies in [Dr. Kravitz's] testimony," including the fact that records for 2011 and 2012 classified plaintiff as NYHA Class II whereas earlier records classified her as Class III, and an ejection fraction[4] (EF) of 10-15% was documented in December 2011 (Tr. 770-71, 795). (Doc. 6 at 4-5). Plaintiff also alleges in connection with her first assignment of error that the ALJ erred by failing to recontact Drs. Miller and Abraham for clarification of certain medical issues. Finally, plaintiff alleges that the ALJ erred by failing to consider whether she was entitled to a closed period of disability as an alternative to a finding of disability. Plaintiff alleges that she is entitled to a closed period of disability from March 2009, the date she suffered a myocardial infarction, to November 2010, when she was still rated NYHA Class II-III. (*Id*. at 7-8).

---

[3] Under the NYHA system, Class II patients have "cardiac disease resulting in slight limitation of physical activity. They are comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea, or anginal pain." http://my.americanheart.org/professional/StatementsGuidelines/ByPublicationDate/PreviousYears/Classification-of-Functional-Capacity-and-Objective-Assessment_UCM_423811_Article.jsp. Class III patients are classified as having "cardiac disease resulting in marked limitation of physical activity. They are comfortable at rest. Less than ordinary activity causes fatigue, palpitation, dyspnea, or anginal pain." *Id*.

[4] "'[E]jection fraction' refers to the percentage of blood that's pumped out of a filled ventricle with each heartbeat." http://www.mayoclinic.org/ejection-fraction/expert-answers/faq-20058286. EF is "expressed as a percentage usually between 50 and 80 percent." http://www.merriam-webster.com/medlineplus/ejection%20fraction.

### a. Failure to consider obesity

Plaintiff alleges that the ALJ erroneously failed to consider the impact of her obesity on her functional capacity. Plaintiff has averted to this issue in only a perfunctory manner and has failed to develop it either legally or factually. (Doc. 6 at 5). Plaintiff has therefore waived this issue. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (a plaintiff's failure to develop an argument in a Statement of Errors challenging an ALJ's non-disability determination amounts to a waiver of that argument). *See also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

### b. Failure to recontact Drs. Miller and Abraham

Plaintiff alleges in connection with her first assignment of error that the ALJ erred by failing to recontact Drs. Miller and Abraham for clarification of plaintiff's EFs and NYHA classifications. Plaintiff alleges that the ALJ was required to recontact the physicians under 20 C.F.R. § 404.1512(e). Sections 404.1512(e) and 416.912(e) were amended effective March 26, 2012, and the provisions for recontacting a treating physician or other medical source are now found at 20 C.F.R. §§ 404.1520b(c)(1) and 416.920b(c)(1). Prior to their amendment, the Sixth Circuit had interpreted the regulations as requiring an ALJ to recontact a treating physician only when the information received was inadequate to reach a determination on the individual's disability status, and not when the ALJ rejected the limitations recommended by that physician. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 274-75 (6th Cir. 2010) (citing *DeBoard v.*

8

*Comm'r of Soc. Sec.,* 211 F. App'x 411, 416 (6th Cir. 2006)). The regulations as amended specify that recontacting a treating physician or other medical source is permissive, not mandatory. 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1) ("We *may* recontact your treating physician, psychologist, or other medical source.") (emphasis added). Here, there is no indication that the information before the ALJ was insufficient to reach a determination as to plaintiff's disability status. Thus, plaintiff has not shown that the ALJ erred by failing to recontact Drs. Miller and Abraham.

### c. Closed period of disability

#### i. Standard of review

Disability benefits may be awarded for a closed period. *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). A claimant who meets the 12-month durational requirement of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) may be entitled to benefits from the time her disability commences until such time as the disability ceases. *Lang v. Secretary of HHS*, No. 88-1561, 1989 WL 40188, at *2 (6th Cir. 1989). In a "closed period" case, the ALJ determines that a new applicant for disability benefits was disabled for a finite period of time that started and stopped prior to the date of the ALJ's decision. *Papaleo v. Astrue*, No. 1:10-cv-2146, 2011 WL 4633744, at *1, n. 1 (N.D. Ohio Sept. 30, 2011) (citing *Shepherd v. Apfel,* 184 F.3d 1196, 1199 n. 2 (10th Cir. 1999) (quoting *Pickett v. Bowen,* 833 F.2d 288, 289 n. 1 (11th Cir. 1987)).

If an ALJ has found a claimant disabled for a closed period, the ALJ must find a medical improvement in the claimant's condition to end her benefits. *Niemasz v. Barnhart*, 155 F. App'x 836, 839-40 (6th Cir. 2005). *See also Cobb v. Comm'r of Soc. Sec.*, No. 1:09cv51, 2010 WL 565260, at *8 (W.D. Mich. Feb. 11, 2010) (citing *Shepherd,* 184 F.3d at 1198, 1200)

(medical improvement standard as set forth in 20 C.F.R. §§ 404.1594 and 416.994 applies to closed period cases); *Long v. Sec'y of HHS,* No. 93-2321, 1994 WL 718540, at *2 (6th Cir. Dec. 27, 1994) ("In order to find a closed period of disability, the Secretary must find that at some point in the past, the claimant was disabled and that, at some later point in the past, he improved to the point of no longer being disabled"); *Jones v. Shalala,* 10 F.3d 522, 524 (7th Cir. 1993)). There must be "substantial evidence" of "medical improvement" and proof that the claimant is "now able to engage in substantial gainful activity" to satisfy the medical improvement standard. *Niemasz,* 155 F. App'x at 840 (citing 42 U.S.C. § 423(f)(1)). The regulations define "medical improvement" as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled. . . . A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)[.]" 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1). The burden of proof to establish that a claimant has experienced a medical improvement which renders her capable of performing substantial gainful activity lies with the Commissioner. *See Kennedy v. Astrue,* 247 F. App'x 761, 765 (6th Cir. 2007).

### ii. Weighing of the medical opinion evidence

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.

1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citing former 20 C.F.R. § 404.1527(d)(2)). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p).

Medical expert testimony consistent with the evidence of record can constitute substantial evidence to support the Commissioner's decision. *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 570 (6th Cir. 1989). Because a non-examining ME has no examining or treating relationship with the claimant, the weight to be afforded the ME's opinion depends on the degree to which the source provides supporting explanations for his opinions and the degree to which his opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). *See also Steagall v. Comm'r of Soc. Sec.*, No. 14-3370, 2015 WL 64654, at *3 (6th Cir. Jan. 6, 2015) (the ALJ must determine what weight to give the opinion of a non-treating physician by applying the same factors applicable to a treating physician's opinion, i.e., the opinion's supportability, its consistency, and the physician's specialization) (citing *Gayheart,* 710 F.3d at 379).

### iii. The ALJ erred in weighing the medical opinion evidence and failing to consider whether plaintiff should be awarded a closed period of disability.

The ALJ's determination that plaintiff was capable of performing a restricted range of sedentary work over the entire period of alleged disability is not supported by substantial

12

evidence. The ALJ found that plaintiff had not been under a disability from March 12, 2009 through April 25, 2012. (Tr. 26). There is medical and other evidence which raises an issue as to whether plaintiff was disabled for a continuous period of at least 12 months during that time period. The ALJ failed to properly consider and weigh this evidence.

The evidence shows that plaintiff suffered a myocardial infarction in March 2009 and that she subsequently underwent coronary revascularization. (*See* Tr. 683). The treatment notes show that plaintiff did not experience steady improvement in the months that followed. Rather, plaintiff experienced episodes of "decompensation" and exacerbations of her symptoms, including shortness of breath and fatigue, and she was variously classified as NYHA Class II, Class II-III, or Class III during the ensuing three-year period. (*See* Tr. 353, 5/19/09- NYHA Class II-III based on chronic systolic dysfunction, EF of 25%, reported to be making some improvement and reportedly feeling well after completing a couple of weeks of cardiac rehabilitation with no angina, extreme shortness of breath, palpitation, syncope, or near syncope; Tr. 349, 6/10/09- after one week of diuretic therapy, plaintiff's shortness of breath and bloating were improving, she had no chest pain, she was currently decompensated[5] in NYHA Class III with EF of 25%; Tr. 346, 7/2/09- plaintiff appeared to be somewhat decompensated although improving, NYHA Class II to III, doing "okay," continuing with rehabilitation, complaints of some shortness of breath on exertion but no chest pain; Tr. 344-45, 7/14/09- functional Class III, worsening shortness of breath, short of breath with minimal activity, unable to walk a short distance without stopping to gasp for breath, on rehabilitation days returned home nauseous and

---

[5] In "compensated" chronic heart failure, "symptoms are stable, and many overt features of fluid retention and pulmonary oedema are absent"; by contrast, "[d]ecompensated heart failure refers to a deterioration, which may present either as an acute episode of pulmonary oedema or as lethargy and malaise, a reduction in exercise tolerance, and increasing breathlessness on exertion." http://www.ncbi.nlm.nih.gov/pmc/articles/PMC1117602/.

vomited a couple of times, prophylactic defibrillator discussed and plaintiff referred to Dr.

Abraham for other investigational heart failure treatments and possibly eventual transplant

evaluation; Tr. 342-43, 8/7/09- NYHA Class II, last estimated EF of 25%, continuing with

cardiac rehabilitation but complained of nausea after workouts, short of breath with exertion, no

chest pain or discomfort; Tr. 340, 9/4/09- plaintiff had consulted with Dr. Abraham, shortness of

breath was slightly better following adjustment in medications, able to climb one flight of stairs

but was short of breath on reaching the top, last estimated EF of approximately 15%; Tr. 338,

10/12/09- slowly getting better but still functional Class III).

In October 2009, Dr. Abraham concurred following consultation with plaintiff that a

biventricular implantable cardiac defibrillator (ICD) was in order, and plaintiff was referred for

consideration of implantation of that device.   (Tr. 338).   In December 2009, she was reported to

be slightly improved from a heart failure standpoint following placement of a defibrillator by Dr.

J. Christian Hays, M.D.; however, it was reported that the LV (left ventrical) lead placement had

been unsuccessful and would be attempted again.   (Tr. 336-37).   Dr. Miller reported in March

2010 that a lead placement was thereafter successfully performed by Dr. Victor Schmelzer, M.D.

(*see* Tr. 334-35), and overall plaintiff was reported to be feeling quite well and was making

preparations to take a trip to San Diego when seen in April 2010.   (Tr. 333).   However, Dr.

Miller reported that her chronic systolic heart failure appeared to be decompensated, and her last

reported EF at that time was 20-25%.   (*Id.*).   The subsequent treatment note dated April 30,

2010, reported that the third lead of plaintiff's ICD had been turned off prior to plaintiff's trip,

and plaintiff reported increased shortness of breath with exertion, swelling in the feet and ankles,

and abdominal bloating over the past month.   (Tr. 332).   She had "very mild decompensation

14

currently." (*Id.*). In May 2010, Dr. Schmelzer wrote in a letter to Dr. Hays that he had seen

plaintiff that day and he summarized plaintiff's medical history, noting that she "had myocardial

infarction, subsequent coronary revascularization, which has left her with severe left ventricular

dysfunction." (*Id.*). Dr. Schmelzer wrote that plaintiff had a "bi-ventricular pacer placed with a

transthoracic epicardial lead placement," which seemed to work quite well following its

placement and had been accompanied by a significant weight loss of 30 pounds, but subsequent

issues with the device had necessitated turning it off and plaintiff had not felt as well since that

time and had begun to gain weight. (*Id.*). Dr. Schmelzer reported that he had discussed with

plaintiff the increased risks and benefits of placement of an epicardial lead. (*Id.*). Dr.

Schmelzer reported that plaintiff was willing to undergo placement of the lead because she had

felt so well after its initial placement, and she would be contacting him to schedule the

procedure. (*Id.*). Dr. Hays reported in a September 2010 questionnaire that plaintiff's NYHA

classification on July 6, 2010, was Class III. (*See* Tr. 714-16). In January 2012, Dr. Miller

rated plaintiff as "still somewhere between functional Class II and Class III in regards to

congestive heart failure," and he reported that an echocardiogram which had been performed in

advance of that day's visit showed an EF in the 10-15% range. (Tr. 768-69). Dr. Miller

reported that an attempt would be made to get plaintiff back into cardiac rehabilitation, and he

also reported that he had referred plaintiff to Dr. Abraham at Ohio State University for a

pre-transplant evaluation. (Tr. 769). When Dr. Abraham saw plaintiff in March 2012, he

reported that on most days of the week, plaintiff could "climb a couple [of] flights of stairs with

no difficulty, but sometimes she will have to stop due to DOE [dyspnea on exertion] and

fatigue." (Tr. 794). Dr. Abraham classified plaintiff as NYHA II at that time. (Tr. 795). Dr.

Abraham opined that plaintiff has "severe LV dystolic dysfunction" and that "[w]hile her

functional capacity seems only moderately impaired, the extent of her functional impairment may

be underestimated due to her young age."  (Tr. 797).

        In weighing the medical evidence and making the RFC determination, the ALJ

discounted the assessments of Drs. Miller and Abraham and gave "very significant weight" to the

testimony of the ME, Dr. Kravitz.  (Tr. 23).  Dr. Kravitz, a cardiologist, reviewed the medical

evidence, answered interrogatories (Tr. 778-81), and testified at the ALJ hearing (Tr. 60-85).

Dr. Kravitz stated that plaintiff has the following impairments: congestive heart failure, status

post-myocardial infarction, status post coronary artery bypass graft, and chronic ischemic

cardiomyopathy.  (Tr. 62).  He opined that plaintiff's impairments did not meet or equal the

Listings.  (*Id.*).  Dr. Kravitz stated that according to plaintiff's "treating physician . . . she is

[NYHA] Classification II, which means she has symptoms with mild impairment," consisting of

her congestive heart failure and shortness of breath.  (Tr. 63).  Dr. Kravitz opined that an EF of

10 to 15% reported earlier in the medical records was necessarily inaccurate and that a more

recently reported EF of 25 to 30% was more consistent with plaintiff's clinical findings and

testimony.  (Tr. 69).  Dr. Kravitz also opined that while Dr. Miller referenced a pre-transplant

evaluation in one report, this treatment was not consistent with either plaintiff's functional

limitations or the medical records.  (Tr. 70).  Dr. Kravitz found plaintiff's symptoms, her

NYHA II classification, and her 25 to 30% ejection fraction were all consistent, and her

testimony regarding her symptoms was identical to the findings contained in Dr. Abraham's

March 2012 records.  (Tr. 76, 83).  The ALJ discussed Dr. Kravitz's explanation of apparent

inconsistencies in the medical evidence, including varying estimations of plaintiff's level of

16

impairment as ranging between Class II and III and differing reports of her EF. (Tr. 23-24).

The ALJ noted Dr. Kravitz's opinion that based on "the most recent evidence," plaintiff appeared

to have "a class II limitation" and that an EF of 25 to 30% was consistent with that classification

and with plaintiff's symptoms. (Tr. 23-24; Tr. 68). The ALJ adopted most of the functional

limitations assessed by Dr. Kravitz.[6]

The ALJ considered Dr. Miller's assessments of plaintiff's overall level of impairment

and gave "significant but less weight" to those assessments. (Tr. 24). The ALJ found Dr.

Miller's assessments appeared to show that plaintiff's heart impairment was compensated and

that she is in NYHA Class II, meaning she has mild symptoms (mild shortness of breath and/or

angina) and she has "slight limitation during ordinary activity," which would allow her to

perform a restricted range of sedentary work. (Tr. 24). The ALJ gave "less weight" to the

assessment of Dr. Abraham that plaintiff's functional capacity was only moderately impaired.[7]

(Tr. 24, citing Tr. 782-97). The ALJ characterized Dr. Abraham's report that plaintiff's

functional capacity seemed to be only "moderately" impaired as an opinion on her functioning;

---

[6] The ALJ found that plaintiff can stand/walk for 2 hours in an 8-hour workday with normal breaks; sit for a total of 8 hours; occasionally crawl, crouch, kneel, stoop, bend, or balance; never climb ladders, ropes, or scaffolds; climb two flights of stairs followed by a 10-15 minute break; have exposure to fumes, odors, dusts, gases or poor ventilation for one hour followed by 15 minutes of rest; and avoid all workplace exposure to hazards such as hazardous machinery and unprotected heights. (Tr. 20, 23, 64-66). The ALJ declined to adopt the ME's opinion that plaintiff can frequently lift 15 pounds and carry 10 pounds and assessed plaintiff as able to only occasionally lift and carry those amounts. (Id.).

[7] Although plaintiff characterizes Dr. Abraham as a treating source, the record shows Dr. Abraham saw plaintiff only a few times over the course of more than 2 1/2 years, including in consultation in October 2009 and again in consultation on March 1, 2012. (See Tr. 340, 782-97). Thus, it does not appear that Dr. Abraham is properly characterized as a treating source. See Helm v. Comm'r of Social Sec. Admin., 405 F. App'x 997, 1001 n. 3 (6th Cir. 2011) ("it is questionable whether a physician who examines a patient only three times over a four-month period is a treating source-as opposed to a nontreating (but examining) source") (citing Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1502) ("A 'nontreating source' (but examining source) has examined the claimant 'but does not have, or did not have, an ongoing treatment relationship with' her.").

however, the ALJ noted that Dr. Abraham did not set forth any specific functional limitations.[8]

(Tr. 24). The ALJ found that Dr. Abraham's test results nonetheless appeared to allow for

sedentary exertion. (*Id.*).

The ALJ's decision to give the most weight to Dr. Kravitz's testimony and opinions as to

plaintiff's functional limitations over the entire period of alleged disability is not supported by

substantial evidence. Dr. Kravitz failed to consider the record as a whole. Dr. Kravitz

explained why in his opinion an EF of 10 to 15% reported in January 2012 was a mistake,

opining that an EF in that low range would preclude even a minimal amount of physical exertion,

such as walking two steps, and was therefore inconsistent with the most recent clinical findings

and with plaintiff's testimony of her functioning. (Tr. 68-70, 77-78). Other than considering

and rejecting this reported test result, Dr. Kravitz relied on only the most recent medical evidence

to explain why he believed plaintiff is properly classified as NYHA Class II. (Tr. 67-68).

Specifically, Dr. Kravitz relied on plaintiff's 2012 records from Ohio State University showing

that plaintiff has an EF between 25 to 30% and she can climb two flights of stairs before

experiencing shortness of breath. Dr. Kravitz found plaintiff's complaints of fatigue were

substantiated to the extent she alleged she must stop and rest after climbing two flights of stairs.

(Tr. 73). However, Dr. Kravitz did not address whether plaintiff's complaints of increased

shortness of breath, fatigue and diminished functioning, including an inability to climb more than

one flight of stairs in September 2009 (*See* Tr. 340), were substantiated by the medical records

documenting medical complications and periods of decompensation which predated Dr.

---

[8] Dr. Abraham opined that: "[Plaintiff] has severe LV systolic dysfunction. While her functional capacity seems
only moderately impaired, the extent of her functional impairment may be underestimated due to her young age."
(Tr. 797). At the hearing, Dr. Kravitz was unable to explain what Dr. Abraham meant by this statement. (Tr. 82).

18

Abraham's March 2012 report.   In response to questioning by the ALJ at the hearing concerning apparent changes in plaintiff's condition and varying classification as NYHA Class II and Class III, the ME stated that "based on the most recent evidence" she appears to be a Class II patient. (Tr. 67-68).   Dr. Kravitz did not address why plaintiff was sometimes classified as Class II and other times as Class III.   He did not explain whether plaintiff would have required some period of time to recover from her 2009 myocardial infarction before returning to work and how the ICD implantation and failed lead placement and the symptoms necessitating those procedures would have impacted plaintiff's functioning.   Nor did the ALJ address these issues.   The ALJ acknowledged in his written decision that "[plaintiff's] condition changes" and that she has variously been classified as NYHA Class III and as Class II.   (Tr. 23).   However, the ALJ did not offer a reasonable explanation as to why plaintiff was appropriately classified as Class II during the entire period of alleged disability, despite the numerous medical records generated by treating and consulting specialists which documented a lower level of functioning.   (*Id.*).   The ALJ discussed at length why, according to Dr. Kravitz, a reported EF of 10 to 15% was not consistent with the remainder of the evidence.   (Tr. 23-24).   However, the ALJ did not point to any testimony by Dr. Kravitz or any other evidence indicating that the NYHA Class III or Class II-III ratings were based on the allegedly erroneous EF or that they were invalid for some other reason.   (*Id.*).   Given the ALJ's failure to reconcile earlier reports rating plaintiff's functioning as Class III or Class II-III with Dr. Abraham's more recent report of plaintiff's functioning, Dr. Kravitz's testimony does not substantially support the ALJ's decision finding plaintiff was capable of sedentary work throughout the period of alleged disability.

Further, the assessments of plaintiff's treating and consulting cardiologists, Drs. Miller and Abraham, do not support the ALJ's non-disability finding. Neither Dr. Miller nor Dr. Abraham issued an assessment of plaintiff's physical capacity, so that their opinions as to her degree of functional limitation are relevant but not controlling. *C.f. Bowen*, 478 F.3d at 749 (noting that a treating doctor's general findings are relevant, but not controlling without an RFC assessment). The ALJ nonetheless considered these assessments of plaintiff's overall level of impairment. The ALJ gave Dr. Miller's assessments "significant but less weight." (Tr. 24). According to the ALJ, those assessments appeared to show that plaintiff's heart impairment was compensated and she was in NYHA Class II, meaning she has mild symptoms (mild shortness of breath and/or angina) and "slight limitation during ordinary activity," which would allow her to perform a restricted range of sedentary work. (*Id*.). As set forth above, read as a whole, Dr. Miller's records do not consistently demonstrate only mild symptoms and compensated heart impairment. To the contrary, Dr. Miller's progress notes and reports document periods of decompensation and marked symptoms. Considered in conjunction with the report of Dr. Hays, which placed plaintiff in NYHA Class III as late as July 2010 (Tr. 714-16), Dr. Miller's assessments suggest that plaintiff suffered debilitating heart symptoms for a continuous 12-month period and do not support a finding that plaintiff was in NYHA Class II and experienced only mild symptoms during the entire period of alleged disability. Moreover, although the ALJ found that Dr. Abraham's March 2012 assessment of plaintiff's functioning would appear to allow for "sedentary exertion" (Tr. 24), this report sheds little light on plaintiff's functional capacity over the period of alleged disability.

Thus, the ALJ erred by giving the most weight to the testimony of the ME, Dr. Kravitz. The medical evidence indicates that plaintiff suffered marked impairment for an extended period of time following her myocardial infarction. The ALJ acknowledged that plaintiff's condition changed during the period of alleged disability and that her physical functioning has at times been assessed as markedly limited. The ALJ nonetheless failed to consider whether there was a continuous period of at least 12 months during which plaintiff's condition precluded her from performing even sedentary work. (Tr. 23-24). To the contrary, the ALJ relied on the recent evidence to find that plaintiff is properly classified as NYHA Class II and is capable of performing sedentary work. (*Id.*). The ALJ credited the testimony of the non-examining physician, Dr. Kravitz, despite the ME's apparent failure to evaluate plaintiff's heart symptoms and their functional limitations throughout the entire period of alleged disability. The ALJ did not reconcile the conflicting assessments of plaintiff's functioning over time and did not give valid reasons for crediting the opinions of Dr. Kravitz over the assessments of plaintiff's treating and consulting heart specialists. Because the evidence indicates that plaintiff may have been disabled for at least 12 continuous months during the period of alleged disability, the ALJ erred by failing to determine whether plaintiff was entitled to a closed period of disability.

Although it appears from the record that plaintiff's heart condition may have imposed debilitating functional limitations for a continuous 12-month time period, the factual issues underlying resolution of this issue have not been adequately developed. If plaintiff was under a closed period of disability, then the burden was on the Commissioner to show that plaintiff experienced medical improvement which rendered her capable of performing sedentary work. This matter should be remanded for a determination of whether plaintiff should be awarded a

21

closed period of disability and, if so, whether she met the regulatory standard for medical improvement. *See* 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1).

### e. Conclusion

The ALJ erred in weighing the medical opinion evidence and failing to consider whether plaintiff is entitled to a closed period of disability. Plaintiff's first and third assignments of error should be sustained.

### 2. The ALJ's credibility assessment

Plaintiff alleges that the ALJ erred in assessing her credibility. Plaintiff contends that the ALJ improperly took into account vacations she took in April 2010 and May 2011 and the fact that she exercised at a gym as noted in medical records dated July 2011. (Doc. 6 at 9). Plaintiff also alleges that the ALJ erred by failing to evaluate her medications and the side effects they cause, and by failing to consider the extensive cardiac treatment she underwent in 2009 and 2010; her testimony that she experiences good days and bad days; and her good work record. (*Id.* at 9-10).

It is not necessary to address plaintiff's credibility argument because the ALJ's reconsideration of this matter on remand may impact the remainder of the ALJ's sequential evaluation, including the assessment of plaintiff's credibility. *See Trent v. Astrue*, No. 1:09cv2680, 2011 WL 841538, at *7 (N.D. Ohio Mar. 8, 2011). In any event, even if plaintiff's fourth assignment of error had merit, the result would be the same, i.e., a remand for further proceedings and not outright reversal for benefits.

### 3. Evaluation of plaintiff's ability to complete a 40-hour work week

Plaintiff alleges that the ALJ erred by failing to evaluate her ability to perform sustained work activity as required under SSR 96-8p. (Doc. 6 at 6-7). Plaintiff notes that according to her testimony at the ALJ hearing, she has good and bad days and she was experiencing about three to four bad days a week at the time of the hearing. (*Id*. at 6, citing Tr. 50-52, 54). Plaintiff also notes that she reported to the SSA in August 2010 that she had three good days a week. (*Id*., citing Tr. 264). Plaintiff alleges that the ME did not "discount the good and bad days" but "noted that she has nausea on bad days [and she needs] a rest period after walking two flights of stairs." (*Id*. at 6-7). Plaintiff further contends that if Dr. Miller's opinion is given the most weight, then she would not be able to sustain work activity for 40 hours a week on a regular and continuing basis and she must therefore be considered disabled. (Doc. 16 at 3-4, citing 20 C.F.R. § 404.1545(b)).

Plaintiff's argument that the ALJ erred by failing to evaluate her ability to perform sustained work activity depends for its success on whether the ALJ improperly weighed the medical opinion evidence and whether the ALJ erred in assessing her credibility. Because the Court has determined that the ALJ should reconsider these matters on remand, the Court need not address this allegation of error.

### III. The motion for remand pursuant to Sentence Six should be denied.

In the alternative to reversal of the ALJ's decision for an award of benefits, plaintiff seeks remand of this case under Sentence Six of 42 U.S.C. § 405(g) for consideration of evidence submitted to the Appeals Council after the ALJ issued his decision on April 25, 2012. (Doc. 7). The evidence consists of two documents prepared by plaintiff's treating heart specialist, Dr.

Miller: (1) a letter opinion dated June 13, 2012, and (2) a statement dated June 21, 2012.  (*Id*.).

In the June 13, 2012 letter, Dr. Miller states that he has been treating plaintiff since 2009 and he

describes the course of treatment.   Dr. Miller writes that after undergoing procedures including

revascularization with coronary artery bypass grafting, plaintiff "is now left with an ejection

fraction [EF] ranging from 15-25%.   She has been New York Heart Association Class III-IV in

regards to congestive heart failure. . . .   She is now referred for consideration for cardiac

transplantation at the Ohio State University."  (*Id*. at 5).   Dr. Miller states that it is his

understanding that plaintiff is applying for "medical disability" and "[i]f there is ever a patient

who is deserving of strongest consideration for disability from a cardiac standpoint, [plaintiff]

would fit that mold."  (*Id*.).

In the June 21, 2012 statement, Dr. Miller wrote that he was recently notified that

plaintiff "was denied disability from a cardiovascular standpoint."  (*Id*. at 6).   Dr. Miller

disputed any suggestion that her "[EF] interpretations were inaccurate and that her New York

Heart Association classification was II rather than III-IV."  (*Id*.).   Dr. Miller wrote that plaintiff

was "on the verge of needing cardiac transplantation" and he had referred her to Dr. Abraham at

Ohio State University, where she was presently undergoing evaluation.  (*Id*.).   Dr. Miller opined

that plaintiff "is not capable of sedentary employment, as more than one day per week, she

experiences significant fatigue, and [at] times lightheadedness and dizziness do [sic] to poor

cardiac output and hypotension."  (*Id*.).

When the Appeals Council declines review, it is the decision of the ALJ and therefore the

facts before the ALJ that are subject to appellate review.  *Cotton*, 2 F.3d at 695-96.   The Court

may not consider new evidence presented to the Appeals Council in deciding whether to uphold,

24

modify, or reverse the ALJ's decision. *Id*. at 696. *See also Cline v. Comm'r of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996). "The district court can, however, remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline*, 96 F.3d at 148. Evidence is new for purposes of § 405(g) only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001) (citing *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990)). Evidence is considered "material" if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (citation omitted). To show "good cause" the moving party must present a valid justification for the failure to have acquired and presented the evidence in the prior administrative proceeding. *Id.* (citing *Willis v. Sec'y of HHS*, 727 F.2d 551, 554 (6th Cir. 1984)). *See also Oliver v. Sec'y of H.H.S.*, 804 F.2d 964, 966 (6th Cir. 1986). The plaintiff bears the burden of showing that a remand is appropriate. *Foster*, 279 F.3d at 357 (citing *Oliver,* 804 F.2d at 966).

Plaintiff has failed to establish the necessary requirements for a Sentence Six remand. Assuming, *arguendo*, that the June 2012 letter and statement are "new" and "material," plaintiff has not established good cause for her failure to submit this evidence before the ALJ issued his decision on April 25, 2012. Dr. Miller states that he has been treating plaintiff since 2009, and plaintiff offers no explanation as to why Dr. Miller could not have submitted an opinion prior to April 2012. The fact that the post-hearing evidence did not exist prior to the hearing is not sufficient to establish good cause, and plaintiff has not offered any other valid reason for her

25

failure to obtain an opinion from Dr. Miller at an earlier date. *See Oliver*, 804 F.2d at 966 ("this circuit has taken a harder line on the good cause test" than simply relying on the age of the evidence). For these reasons, plaintiff's motion to remand this matter pursuant to Sentence Six should be denied.

## IV. Conclusion

This matter should be reversed and remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. All essential factual issues have not been resolved in this matter, nor does the record adequately establish whether plaintiff is entitled to benefits for a closed period of twelve months or longer. *Faucher v. Sec. of HHS*, 17 F.3d 171, 176 (6th Cir. 1994). Accordingly, reversal and remand are required for proper analysis of the unresolved issues. Additional vocational and medical evidence should be elicited on remand as warranted.

### IT IS THEREFORE RECOMMENDED THAT:

1. The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

2. Plaintiff's motion for remand pursuant to Sentence Six of 42 U.S.C. § 405(g) be **DENIED**.

Date: ___2/5/15___

Karen L. Litkovitz
United States Magistrate Judge

26

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TRACI L. BROWN,
     Plaintiff,

     vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

Case No. 1:13-cv-851
Dlott, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).